# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

**No. 24-1379**

BETTER WAY FORD, LLC; PEGGY A. CIANCHETTE; CIANCHETTE
FAMILY, LLC; ERIC L. CIANCHETTE

Plaintiffs - Appellants,

v.

FORD MOTOR COMPANY,

Defendant – Appellee,

FORD MOTOR CREDIT COMPANY,

Defendant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

_____

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

Timothy J. Bryant, Esq. (Bar No. 52684)
Michael J. Melusky, Esq. (Bar No. 1212211)
Preti, Flaherty, Beliveau & Pachios LLP
One City Center, P.O. Box 9545
Portland, ME 04112-9546
207-791-3000
tbryant@preti.com
mmelusky@preti.com
*Attorneys for Plaintiffs-Appellants Better
Way Ford, LLC, Peggy A. Cianchette, Eric
L. Cianchette and Cianchette Family, LLC*

# TABLE OF CONTENTS

ARGUMENT .............................................................................................................1

I.   The Amended Complaint states a claim for civil perjury. ...........................1

  A.  McDonough's testimony was introduced at trial by the adverse party........1

  B.  Ford is McDonough's confederate with respect to the perjury, and McDonough is Ford's agent. .......................................................................2

  C.  Inconsistent testimony may be evidence of perjury....................................4

  D.  Plaintiffs sufficiently allege a civil perjury claim. .....................................6

    1.  Plaintiffs have stated a claim for perjury based on McDonough's testimony that Tucker could pledge his membership interest as collateral. ...............................................................................................6

    2.  Plaintiffs have stated a claim for perjury based on McDonough's testimony that she was authorized by Ford to provide an affidavit and testify. .....................................................................................................8

      i)   McDonough's affidavit may be the basis for a perjury claim. ............8

      ii)  McDonough's testimony that she was authorized by Ford to testify may be the basis of a perjury claim. .......................................................9

    3.  Plaintiffs have stated a claim for perjury based on McDonough's testimony that Ford approved the transaction and that no further steps were necessary.......................................................................................11

II.  The Amended Complaint states a claim under Section 1174. .....................14

III. The Amended Complaint states a claim for breach of contract. ..................16

IV.  The Amended Complaint states a claim for tortious interference. ..............19

CONCLUSION ....................................................................................................20

CERTIFICATE OF COMPLIANCE ...................................................................22

22473241.4

# TABLE OF AUTHORITIES

*Bean v. Cummings,*
　　2008 ME 18, 939 A.2d 676…………………………………………………….5

*Ford Motor Co. v. Darling's,*
　　2014 ME 7, 86 A.3d 35……………………………………………………..16

*Gniadek v. Camp Sunshine at Sebago Lake, Inc.,*
　　2011 ME 11, 11 A.3d 308…………………………………………………...3, 4

*Hider v. City of Portland*,
　　No. CV-05-465, 2006 WL 522428 (Me. Super. Feb. 8, 2006)….4, 10, 13, 14

*Hubbard Chevrolet Co. v. Gen. Motors Corp*.,
　　873 F.2d 873 (5th Cir. 1989)……………………………………...…….18, 19

*Kraul v. Maine Bonding & Cas. Co*.,
　　672 A.2d 1107 (Me. 1996)……………………..…………………………9

*Kremer v. Chemical Const. Corp.*,
　　456 U.S. 461 (1982)……………………………………………………..16

*McKee v. Cosby*,
　　874 F.3d 54 (1st Cir. 2017)…………………………….………....9, 10, 12

*Ne. Drilling, Inc. v. Inner Space Servs., Inc*.,
　　No. CIV. 00-380-P-H, 2001 WL 501051 (D. Me. May 11, 2001)..........…2, 3

*Rutland v. Mullen*,
　　2002 ME 98, 798 A.2d 1104…………………………....………….…....20

*Spickler v. Greenberg*,
　　586 A.2d 1232 (Me. 1991)…………………………..………………….....5

*State v. Cormier,*
　　535 A.2d 913 (Me. 1987)…………………………………………..5, 14

*Stephenson v. Allstate Ins. Co.*,
　　328 F.3d 822 (6th Cir. 2003)……………………………………………17

22473241.4

*Teamsters, Chauffeurs, Warehousemen & Helpers Union, Loc. No. 59 v. Superline Transp. Co.,*
      953 F.2d 17 (1st Cir. 1992)…………………………………..……………....…8

*Transurface Carriers, Inc. v. Ford Motor Co.,*
      738 F.2d 42 (1st Cir. 1984)……………………..…………………………....2

**Statutes**

10 M.R.S. § 1173……………………………….……………..……….…14-16

14 M.R.S. § 870…………………………………………………………1, 2

31 M.R.S. § 1556……………………………………………………….…...7

**Other Authorities**

Me. R. Civ. P. 43(e)……………………………………………………...…8, 9

22473241.4

# ARGUMENT

## I. The Amended Complaint states a claim for civil perjury.

### A. McDonough's testimony was introduced at trial by the adverse party.

Ford starts by pointing to the provision in 14 M.R.S. § 870 that, to be actionable, the testimony alleged to be false must have been "'introduced at the trial by the adverse party' and the injured party may 'bring an action against such adverse party . . . .'" Ford Br. at 19. According to Ford, because it was not a party to the 2016 Lawsuit, Ford "is not an adverse party subject to suit under section 870 . . . ." *Id.*

Ford's argument misconstrues the perjury statute: the "adverse party" in the phrase "introduced at the trial by the adverse party" is the adverse party *in the underlying action* where the perjury happened. The reason the statute is written this way is not hard to see: if McDonough's false testimony had been introduced into the 2016 Lawsuit by Eric and Peggy themselves, it would not make sense to let them now complain that the judgment against them had been obtained by the perjury of their own witness. But because McDonough's testimony was introduced at trial, not by Plaintiffs, but by the adverse party in the 2016 Lawsuit, Tucker, who benefitted from it, Plaintiffs may assert a claim under the statute.

1

**B.    Ford is McDonough's confederate with respect to the perjury, and McDonough is Ford's agent.**

The statute gives Plaintiffs the option of asserting a civil perjury claim

against either Tucker ("such adverse party"), or McDonough (the "perjured

witness" Tucker introduced), or Ford (her "confederate"):

> When a judgment has been obtained against a party by the perjury of a
> witness introduced at the trial by the adverse party, the injured party
> may . . . bring an action *against such adverse party, or any perjured
> witness or confederate in the perjury* . . . .

14 M.R.S. § 870(1). Ford argues that despite being McDonough's employer and

principal, it was not a "confederate" in her perjury, because (according to Ford)

"[t]o allege a civil perjury claim against a 'confederate,' the complaint must

contain allegations demonstrating that the purported confederate had knowledge of

the witness's perjury." Ford Br. at 20. The statute, however, imposes no such

knowledge requirement.[1] Even the unpublished trial court decision Ford cites on

this point does not hold that an employer must have knowledge of their employee's

perjury to be sued as a confederate under section 870—it notes in passing that

"[t]here is no suggestion that either Atkinson or NDI [the potential confederates]

knew that Daniels would commit perjury," *Ne. Drilling, Inc. v. Inner Space Servs.,*

---

[1] Even if Ford's argument were correct, the Complaint alleges that McDonough
knew the testimony was untrue and, as Ford's agent, her knowledge is imputed to
Ford-as-principal. *Transurface Carriers, Inc. v. Ford Motor Co.,* 738 F.2d 42, 45
(1st Cir. 1984).

22473241.4

*Inc.*, No. CIV. 00-380-P-H, 2001 WL 501051, at *1 (D. Me. May 11, 2001), but there is no indication in the opinion that such knowledge is required to state a claim. The plaintiff had alleged that "Atkinson was 'confederate in the perjury'" in "wholly conclusory" terms, by "merely quoting the language of the statute and failing to allege any facts to support it." *Id*. Here, in contrast, Plaintiffs specifically allege that McDonough was Ford's managerial employee and agent. Am Compl. ¶ 13. As such, Petitioners have properly asserted a claim against Ford as a confederate in McDonough's perjury.

Even if the Court were to conclude that Ford was not a "confederate" in McDonough's perjury, a term the statute does not define, Ford would still be liable for McDonough's perjury under basic agency law principles. The Amended Complaint alleges that McDonough was an agent and managerial employee of Ford. Am Compl. ¶ 13. Under Maine agency law, principals are liable for the actions of their agents in the course of employment. *See Gniadek v. Camp Sunshine at Sebago Lake, Inc.,* 2011 ME 11, ¶ 34, 11 A.3d 308 ("'A principal is subject to vicarious liability for a tort committed by an agent in dealing or communicating with a third party when actions taken by the agent with apparent authority constitute the tort . . . .'") (quoting Restatement (Third) of Agency § 7.08); *see also* Restatement (Third) Of Agency § 5.03 ("[N]otice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the

3

fact is material to the agent's duties to the principal" (with exceptions inapplicable here)).[2] Setting aside McDonough's authorization to testify in the 2016 Litigation, there is no question that she testified in her capacity as a Ford employee and agent. Ford is therefore liable for McDonough's perjury.

### C. Inconsistent testimony may be evidence of perjury.

Turning to the merits of the civil perjury count, Ford claims to have identified a principle in Maine law that "inconsistencies in testimony do not constitute perjury," and indeed that "inconsistencies between a witness's supposedly-perjured and subsequent testimony 'cannot be the basis' of a civil perjury claim." Ford Br. at 24. Of course no such principle exists: if a witness testifies "X is true" in one proceeding, and then testifies in a subsequent proceeding "X is false," there is no plausible reason why that inconsistency could not support a claim that the witness committed perjury in one or the other proceeding. The cases Ford cites do not support its illogical claim: in *Hider v. City of Portland*, No. CV-05-465, 2006 WL 522428 (Me. Super. Feb. 8, 2006), the trial court did not say that inconsistencies can never be the basis for a civil perjury claim, but just that *the specific inconsistencies in that case* did not rise to the level

---

[2] At the very least, Ann McDonough testified in the 2016 Lawsuit as Ford's apparent agent, which also subjects Ford to liability for McDonough's civil perjury as "'[a] principal is subject to vicarious liability" for "actions taken by the agent with apparent authority . . . .'" *Gniadek*, 2011 ME 11, ¶ 34 (quoting Restatement (Third) of Agency § 7.08).

22473241.4

of perjury. Maine Law is clear that "[a] statement is sufficiently material to form the basis of a charge of perjury if it is *capable* of influencing the court upon an issue that *could* affect the outcome of the proceeding." *Spickler v. Greenberg*, 586 A.2d 1232, 1233 (Me. 1991) (emphasis added).

Ford also cites *Bean v. Cummings*, 2008 ME 18, 939 A.2d 676, but the holding there was not that inconsistent testimony can never constitute perjury, but rather that the plaintiff had failed to proffer any newly discovered evidence he could not have presented at the trial where the alleged perjury was introduced. *See Bean v. Cummings*, 2008 ME 18, ¶ 13, 939 A.2d 676, 680 ("instead of asserting newly discovered evidence, Bean's claim rested primarily on 'legal conclusions regarding whether [Cummings's] charges to [Bean] were reasonable,' the same issues that were thoroughly litigated at trial."); *id*. ¶ 14, 939 A.2d 676, 681 ("Bean cannot now sustain a perjury claim by merely alleging that certain portions of Cummings's testimony were false without showing that information demonstrating its falsity was unavailable to him before the judgment."). Similarly, in *State v. Cormier,* 535 A.2d 913 (Me. 1987), another case Ford cites, the question on appeal was whether the prosecution utilized perjured testimony sufficient to overturn a criminal conviction when the law enforcement witness provided inconsistent testimony on direct and cross-examination. *Cormier,* 535 A.2d at 917 ("[T]he inconsistencies were known to Cormier's counsel and argued to the jury."). Unlike

the parties in the cases Ford cites, Plaintiffs here have alleged newly discovered evidence in the form of McDonough's 2022 testimony and the Dealer Management Assertions letter.

### D. Plaintiffs sufficiently allege a civil perjury claim.

1. Plaintiffs have stated a claim for perjury based on McDonough's testimony that Tucker could pledge his membership interest as collateral.

In response to the allegation in the Amended Complaint that McDonough committed perjury in the 2016 Lawsuit when she testified that she understood when she reviewed the proposed transaction that Tucker was pledging his membership interest in PET as collateral for the Androscoggin Loan—something she made clear at the 2022 Board hearing Ford does not permit—Ford claims that McDonough never said Tucker could pledge "*control* of the dealership" as collateral," but rather that he could pledge "his *membership interest* in the dealership . . ." Ford Br. at 32 (emphasis in original). That, however, is a distinction without a difference, given that Tucker's membership interest was a controlling interest. *See* App._155-56, ¶¶ 59, 64, 68 (if the transaction had closed, Tucker's membership interest would have given him 100% ownership of the dealership, and thus total control of the dealership); *see also* App._160, 176-77, ¶¶ 92-97, 178-185 (drawing all inferences in Plaintiffs' favor, the Amended Complaint alleges that Tucker pledged control of the dealership and that Ford

6

knew it). A jury could reasonably determine that when McDonough testified that Tucker was able to pledge his controlling membership interest in the dealership, that amounted to testimony that he could pledge control.

Ford says Plaintiffs "conflate" two things here ("Tucker's membership interest with his control over the dealership") (Ford Br. at 33)—but, as just explained, the things Plaintiffs are "conflating" are for present purposes interchangeable. Ford writes that "Plaintiffs claim that . . . the membership interest that Tucker proposed as collateral would effectively result in control of the dealership under Maine law" (Ford Br. at 33), but it is axiomatic that the holder of a majority interest in an entity controls the entity. *See* 31 M.R.S. § 1556 (Maine LLCs are controlled by membership).

It is notable that Ford does not address a key piece of newly discovered evidence that underlies Plaintiffs' claims and is addressed in their opening brief: the "non-cross collateralization letter" or "Dealer Management Assertions letter." App._177, ¶ 184. Ford ignores Plaintiffs' argument that "[t]his document demonstrated the falsity of McDonough's other statements concerning pledges of ownership interests and control over dealerships to third-party lenders." Opening Br. at 25. McDonough testified unequivocally in 2018 that there was nothing "else necessary besides the closing" to finalize the approval. *See* App._167, ¶ 133. Yet, accepting the Complaint as true, she testified in the 2022 hearing that (i) the

22473241.4

Assertions Letter was a required document in all transactions and (ii) she did not

have it in the attempted 2015 transaction. App._177, ¶ 184. Accordingly, there

absolutely were items "besides the closing" necessary before an approval could

issue, making her 2018 statements perjury.

<blockquote>

2. <u>Plaintiffs have stated a claim for perjury based on McDonough's testimony that she was authorized by Ford to provide an affidavit and testify.</u>

i) *McDonough's affidavit may be the basis for a perjury claim.*

</blockquote>

Ford's next argument is that "McDonough's affidavit cannot form the basis

for a civil perjury claim because it was not 'introduced at the trial.'" Ford Br. at 25.

A threshold problem here is that Ford did not make this argument in the trial court

and may not assert it for the first time on appeal. *See Teamsters, Chauffeurs,*

*Warehousemen & Helpers Union, Loc. No. 59 v. Superline Transp. Co*., 953 F.2d

17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the

most extraordinary circumstances, legal theories not raised squarely in the lower

court cannot be broached for the first time on appeal.").

Even if Ford had not forfeited the argument by failing to raise it below, the

argument that false testimony in an affidavit cannot be the basis for a civil perjury

claim fails here because the affidavit in question was given in support of a trial-

related motion in limine to exclude expert testimony from the jury, and Maine Rule

of Civil Procedure 43 ("Taking of Testimony") provides for evidence to be

8

submitted by affidavit. *See* Me. R. Civ. P. 43(e) ("When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties . . . ."). The affidavit was therefore introduced at trial within the meaning of the civil perjury statute. The case Ford cites in support of its argument is inapplicable, as it deals with summary judgment rather than a trial-related motion in limine. *See Kraul v. Maine Bonding & Cas. Co.*, 672 A.2d 1107, 1109 (Me. 1996) ("A summary judgment proceeding is not a trial; rather, it is a method for promptly disposing of an action *without a trial* . . . .") (emphasis added).

> ii) *McDonough's testimony that she was authorized by Ford to testify may be the basis of a perjury claim.*

While the affidavit provides grounds for a perjury claim, Plaintiffs have also stated a claim under the civil perjury statute based on McDonough's trial testimony. Ford insists that "[a]t no point during the 2022 Board proceeding did Ms. McDonough contradict her prior testimony" in the 2016 Lawsuit that she was authorized by Ford to testify, because "[h]er statement before the Board in 2022 that she was not authorized by Ford was made in response to a question that related specifically to her *affidavit* . . . ." Ford Br. at 26.[3] But Ford acknowledges that

---

[3] McDonough's recanting of her sworn *written* statement she was "authorized by Ford" gives rise to a reasonable inference that her sworn *verbal* statement she was "authorized by Ford" was also false. The Court must make this inference in Plaintiffs' favor. *McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017).

22473241.4

"McDonough was asked [at trial] whether 'when [she] received the subpoena to testify at trial, did [she] tell Ford's counsel or anyone at Ford about it,' to which she answered that she did not . . . ." Ford Br. at 27. Ford is correct that McDonough did not in the 2022 Board proceeding utter the precise words "I was not authorized by Ford to testify in the 2016 Lawsuit." But a jury could reasonably infer that that was the gist of what she did testify to, as logic would indicate that if she failed to tell anyone at Ford that she was testifying she could not have been authorized by Ford to do so. *See McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017) (court must "accept as true the complaint's well-pleaded factual allegations, and draw all reasonable inferences in favor of the non-moving party").

Ford then suggests that "[t]o the extent Ms. McDonough's testimony at the 2022 Board proceeding is inconsistent with her prior testimony about being authorized by Ford, such inconsistencies in her testimony 'do[] not rise to the level of being knowingly perjured.'" Ford Br. at 27. But whether the inconsistencies between the different things McDonough said at different times rise to the level of perjury is for a jury to determine, not for the trial court to decide on a motion to dismiss. Here Ford cites *Hider* as having held that "inconsistencies did not constitute perjury where the witness 'was not asked, and did not testify' in the first proceeding about topics that he testified about in the second proceeding." Ford Br. at 27. That may have been what happened in *Hider*, but here (as just explained)

10

McDonough gave testimony in the second proceeding that made clear that her testimony in the first proceeding was false. It would make no sense for there to be a blanket rule that inconsistent statements can only be evidence of perjury if the statements were made in response to the exact same question and the answers were expressed the exact same way. Again, it is for the jury to decide whether what McDonough said at the 2022 Board proceeding is enough to support Plaintiffs' claim that her testimony in the 2016 Lawsuit was false. Likewise, as for the fact that McDonough worked for Ford for 28 years and held a relevant managerial position (Ford Br. at 27), it is for the jury, not the trial court, to decide whether that somehow makes McDonough's testimony in the 2016 Lawsuit that she was authorized by Ford to testify not false.

3. <u>Plaintiffs have stated a claim for perjury based on McDonough's testimony that Ford approved the transaction and that no further steps were necessary.</u>

Ford argues that the district court "properly considered the entirety of Ms. McDonough's testimony and concluded that '[t]he theory that McDonough lied when she testified that the transaction was approved and that there was nothing left for Ford to do to execute the agreement is not plausible on a reading of McDonough's entire trial testimony.'" Ford Br. at 28. But in referencing what the district court "concluded" based on "the entirety of Ms. McDonough's testimony," Ford highlights the district court's error.

11

The Amended Complaint alleges false statements made by McDonough. *See* Opening Brief at 24 ("McDonough testified at the 2018 trial that Ford had approved the 2015 Transaction. She further testified that once Ford had approved the 2015 Transaction, "effective on December 7, 2015[,]" there was nothing "else necessary besides the closing in order for Ford to . . . finalize the approval[.] But in the 2022 Proceeding, McDonough testified that Ford had not in fact approved the 2015 Transaction—meaning that her testimony in the 2016 Litigation was false.") (record citations omitted). But instead of "accept[ing] as true the complaint's well-pleaded factual allegations, and draw[ing] all reasonable inferences in favor of the non-moving party," *McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017), the district court weighed and evaluated "the entirety of Ms. McDonough's testimony" (Ford Br. at 28), and in effect made a factual determination adverse to Plaintiffs.

Ford tries to argue that McDonough's testimony at the 2018 trial was not inconsistent with her 2022 testimony that Ford had approved the transaction because McDonough said in 2018 that "the Letter of Understanding sent to Tucker was not signed by Ford because the transaction must close before Ford can execute the agreement and finalize its approval." Ford Br. at 29. But what the 2018 testimony Ford cites describes is just a ministerial step that was certain to be taken. *See* App. 300 ("Q. I notice that it is not signed by Ford. A. No, because *we were waiting for it to go to closing*. Q. Okay. Was anything else necessary besides the

12

closing in order for Ford to sign this document and finalize the approval? A. No.") (emphasis added); *see also* App. 328 ("[O]nce the closing occurs, it goes to Detroit and *it is executed*.") (emphasis added). A jury could determine that McDonough's 2018 testimony was that the transaction had for all practical purposes been approved by Ford, and—if that jury accepted McDonough's contrary 2022 testimony—that her 2018 testimony was therefore false. Respectfully, the district court overstepped its bounds at the pleading stage when it found otherwise based on its weighing and evaluation of "the entirety of Ms. McDonough's testimony" (Ford Br. at 28). That is work the trial court was required to leave to a jury.

As for Ford's argument that McDonough did not commit perjury at the 2018 trial when she testified that Ford had approved the transaction because "she was not asked at the 2018 trial about the number of people required to review the transaction" or about "checklists" that remained to be checked (Ford Br. at 31), it is no answer to an allegation that a witness committed perjury to say that she was not asked specific questions. The cases Ford cites to support its argument are inapplicable. *Hider v. City of Portland*, No. CIV.A. CV-05-465, 2006 WL 522428 (Me. Super. Feb. 8, 2006), was not decided upon the fact that the witness alleged to have committed perjury was not asked a particular question, but rather that the witness had not testified about the subject of the alleged perjury. *See id.* at *2 ("Mr. Hider claims that Officer Shaughnessy committing [*sic*] perjury in Mr.

Hider's 1993 trial by neglecting to inform the court that he had an active role in drafting the warrant along with Officer Barlett. However, in the segment of the transcript provided by Mr. Hider, Officer Shaughnessy was not asked about the details of the warrant."). Nor was *State v. Cormier*, 535 A.2d 913 (Me. 1987), about the failure to pose a specific question to a witness; the perjury count there failed because the false testimony had been revealed and explained to the jury during the trial in which it was given. *See id.* at 916 ("Cormier claims that Sergeant Shuman perjured himself when Shuman testified that he did not know of the robberies prior to his interview with Pollard in 1985. During cross-examination, Cormier's counsel confronted Shuman with a transcript of an interview he had conducted with Richard Sargent's wife, Sharon Sargent, on July 24, 1984. During the interview, Shuman discussed the robberies with Ms. Sargent, indicating that he had knowledge of the robberies prior to his interview with Pollard. Cormier's counsel stressed this inconsistency in Shuman's testimony in her final argument to the jury."). Nothing like that happened here.

Given the above, Plaintiffs stated a claim for civil perjury, and this Court should reverse the District Court's holding to the contrary.

## II.     The Amended Complaint states a claim under Section 1174.

In response to Plaintiffs argument, based on the provision in 10 M.R.S. § 1173 that "[a] final judgment, order or decree rendered against a person in any

14

civil, criminal or administrative proceeding" under the Act "is regarded as prima facie evidence" only, and thus does not have res judicata effect, Ford asserts that "it is clear that the 'prima facie evidence' provision is intended to govern how a previous judgment may be used as evidence in the types of proceedings that are authorized by Section 1173." Ford Br. at 42. But that is precisely Plaintiffs' point: this is a proceeding of the type authorized by Section 1173 (an "action for damages" by a "dealer who suffers financial loss of money or property," 10 M.R.S. § 1173(1)), and the way a previous judgment may be used in that type of proceeding is "as prima facie evidence" (*id.*), not as a wholesale bar to the claim as the district court ruled. Ford never explains why the fact that a subsequent court proceeding may be necessary because the Board does not have the power to award damages should change the analysis on this point.

Ford insists that Plaintiffs' interpretation is "absurd" because it would "allow[] a plaintiff two bites at the apple—one before the Board, and another in court." Ford Br. at 43. But the "two bites at the apple" objection misses the mark here. While the statute does give plaintiffs the opportunity to pursue a claim in court after having first proceeded before the Board, the court proceeding is on different terms than the Board proceeding—precisely because the Board's findings may be used as prima facie evidence in the court proceedings. This does give plaintiffs a second chance to make their case, but it is no more an unwarranted (as

15

22473241.4

the cliché implies) "second bite at the apple" than would be an appeal of a district court decision to the court of appeals. Ford dismisses *Ford Motor Co. v. Darling's*, 2014 ME 7, 86 A.3d 35, as having "involved a court case for damages following a Board proceeding" (Ford Br. at 43), but that is precisely the situation here. *See id*. ("*Darling's* is relevant insofar as it makes clear that the purpose of Section 1173 is to facilitate a subsequent action to award damages that the Board cannot"). The district court erred when it disregarded the plain text of Section 1173 and gave the Board's order dispositive force, rather than treating it as prima facie evidence as the statute provides.[4]

## III. The Amended Complaint states a claim for breach of contract.

The Amended Complaint alleges that Ford breached the implied covenant of good faith and fair dealing in connection with its 2013 Sales & Service Agreement

---

[4] Ford also takes issue with Plaintiffs' arguments with respect to the evidentiary standards at issue in the Board Proceeding and claims that such arguments cannot prevent an application of claim preclusion, but, as Plaintiffs explained, the Board's actions resulted in the admission and exclusion of evidence that would not have occurred had the rules of evidence applied. Those actions deprived Plaintiffs of both a full and fair opportunity to litigate and their due process rights in the Board Proceeding. Courts have recognized that such circumstances should be considered before a court applies claim preclusion. *See, e.g.*, *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 480-82 (1982) (noting that a court "may not grant preclusive effect in its own courts to a constitutionally infirm judgment"); *id.* at 481 n.22 (noting that "invocation of res judicata or claim preclusion is subject to the same limitation" of "a full and fair opportunity to litigate" as "in the context of collateral estoppel or issue preclusion").

22473241.4

with Better Way Ford by, *inter alia*, leading Tucker to believe[5] that it would not enforce the standards contained in the agreement in connection with Tucker's attempt to purchase Peggy and Eric's ownership interests in Casco Bay Ford and deceiving Tucker by purporting to approve the 2015 Transaction. Ford further made numerous representations to Plaintiffs concerning its franchise capital standards in 2013. *See*, *e.g.*, App. 154-55, ¶¶ 52-63. Plaintiffs, as the dependent party, were forced to "rely on the good faith of the party in control," Ford, in applying those standards. *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003) (internal citation omitted). Those capital standards were expressly incorporated into the 2013 Sales and Service Agreement ("SSA"). *See* App._420 (SSA Sec. 6(d)).

Contrary to Ford's statement that there are "limited allegations" in the Complaint (Ford Br. at 47), Plaintiffs identified these capital standards and their integration into the Sales and Service Agreement. App._152-153, ¶¶ 38-43, App._157-159, ¶¶ 70-91. The Opposition ignores these allegations – which the Court assumes are true – as well as the standards Ford represents to its dealers as "rigid" and "adhered to in all cases." App._152, ¶ 40. As Plaintiffs noted in the

---

[5] Ford accuses Plaintiffs of being inconsistent when they argue based on "'the grant of approval in violation of Ford's prior (and subsequent) represented standards,'" given that "the rest of Plaintiffs' Amended Complaint . . . is premised on Ford's *non*-approval of the 2015 transaction." Ford Br. at 47. Plaintiffs' claim is based on Ford's *purported* grant of approval that misled Tucker.

22473241.4

Brief, the dispute focuses on whether Ford's purported grant of approval was consistent with the capital standards. Opening Br. at 41. There is no dispute that Ford retained the right to approve dealership transactions. The question is whether they were required to exercise that right in good faith considering all the other provisions of the contract, including the "rigid" capital provisions. Plaintiffs submit they were, and the Complaint alleges factually that they failed to do so.

Ford argues that "nothing in the Sales and Service Agreement governs Ford's communications to Tucker," (Ford Br. at 46–47) which Ford claims are "not actionable" as a breach of contract by Ford. Ford Br. at 48. But Ford fails to explain why its obligations to Better Way Ford under the Sales & Service Agreement do not include an implied obligation to act in good faith toward Better Way Ford's counterparty in a prospective transaction to change the ownership of the dealership, a matter on which the agreement gives Ford unfettered discretion. *See Hubbard Chevrolet Co. v. Gen. Motors Corp.*, 873 F.2d 873, 877 (5th Cir. 1989) ("Michigan courts rely on the implied good faith covenant [w]here a party to a contract makes the manner of its performance a matter of its own discretion . . . .") (quotation marks omitted).[6] As explained in Plaintiffs' opening brief, no provision in the Sales & Service Agreement governs the granting of

---

[6] Ford recognizes that a claim for breach of contract lies "where there is 'a lack of clarity' or 'an omission in the express contract' such that 'the dependent party must rely on the good faith of the party in control.'" Ford Br. at 46 (citations omitted).

18

approval for changes in ownership of a dealership—which means the implied covenant of good faith comes into play "to supply limits on the parties' conduct when their contract defers decision on a particular term, omits terms or provides ambiguous terms." *Hubbard*, 873 F.2d at 876–77. The district court was right to observe that "the implied covenant cannot be used to override the express terms of a contract" (Ford Br. at 41), but Ford identifies no express term that is being overridden. Ford further fails to answer the question posed in the opening brief: what legal standard governs Ford's grant of approval for dealership transactions? Opening Br. at 41-42. While Ford is correct that it may not unreasonably *withhold* approval, Ford ignores that there is no such restriction on its discretion to *grant* approval. As such, Ford's discretion to *grant* approval is wholly unbridled. And, as Ford acknowledges, "unbridled discretion" triggers the implied covenant under Michigan law. Ford Br. at 52. Plaintiffs have stated a claim for breach of the implied covenant of good faith and fair dealing.

## IV. The Amended Complaint states a claim for tortious interference.

Ford seeks dismissal of Plaintiffs' tortious interference count on the ground that the effect of Ford's false statements that Tucker had been approved to buy the dealership "was not to scuttle the transaction, but rather to motivate Tucker to complete it." Ford Br. at 56; *see also id*. ("Tortious interference requires that an agreement or prospective agreement be *interfered* with . . . ."). It is true that the

19

tortious interference scenario this case presents is an uncommon one. But a jury could reasonably determine that Ford's alleged conduct—deceiving Tucker into believing a transaction would go forward when in fact Ford knew it would not—amounts to interfering with that transaction by fraud. *See Rutland v. Mullen*, 2002 ME 98 ¶ 14, 798 A.2d 1104, 1111 (elements of tortious interference by fraud are "(1) mak[ing] a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff."). That is so even if the form of interference alleged here (the particular inducement to Tucker) is unusual. Plaintiffs have stated a claim for tortious interference with contract.

## CONCLUSION

For the foregoing reasons, the judgment of the United States District Court for the District of Maine should be reversed as to Counts I, II, IV, V, VI, and VII of the Amended Complaint.

Dated: November 20, 2024        Respectfully submitted,

                                                  */s/ Timothy J. Bryant*
                                                  Timothy J. Bryant, Esq. (Bar No. 52684)
                                                  Michael J. Melusky, Esq. (Bar No.1212211)
                                                  Preti, Flaherty, Beliveau & Pachios LLP

22473241.4

One City Center, P.O. Box 9545
Portland, ME 04112-9546
207-791-3000
tbryant@preti.com
mmelusky@preti.com
*Attorneys for Plaintiffs-Appellants Better Way Ford, LLC, Peggy A. Cianchette, Eric L. Cianchette and Cianchette Family, LLC*

22473241.4

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations set forth in Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 5,158 words.

I further certify that this document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2405 Build 16.0.17628.20006) 64-bit in a 14-point Times New Roman font.

Dated: November 20, 2024            Respectfully submitted,


                                    /s/Timothy J. Bryant
                                    Timothy J. Bryant, Esq. (Bar No. 52684)
                                    Michael J. Melusky, Esq. (Bar No. 1212211)
                                    Preti, Flaherty, Beliveau & Pachios LLP
                                    One City Center, P.O. Box 9545
                                    Portland, ME 04112-9546
                                    207-791-3000
                                    tbryant@preti.com
                                    mmelusky@preti.com
                                    *Attorneys for Plaintiffs-Appellants Better Way Ford, LLC, Peggy A. Cianchette, Eric L. Cianchette and Cianchette Family, LLC*

22473241.4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 20, 2024, I electronically filed the

foregoing Reply Brief with the United States Court of Appeals for the First Circuit

by using the CM/ECF system. I certify that the following parties or their counsel of

record are registered as ECF Filers and that they will be served by CM/ECF

system.

Robert M. Palumbos
Sara Smith
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
rmpalumbos@duanemorris.com
sesmith@duanemorris.com

Michelle I. Schaffer
Campbell Conroy & O'Neil, PC
1 Construction Wharf, Suite 310
Boston, MA 02129
mschaffer@campbell-trial-lawyers.com

William J. Conroy
Emily J. Rogers
Kristin E. Schicora
Campbell Conroy & O'Neil, PC
1205 Westlake's Drive, Suite 330
Berwyn, PA 19312
wconroy@Campbell-trial-lawyers.com
ERogers@Campbell-trial-lawyers.com
KShicora@Campbell-Trial-Lawyers.com

Date: November 20, 2024

/s/ Timothy Bryant
Timothy J. Bryant